UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

VERA GUNNARSON,

                Plaintiff,

     v.

TRANSAMERICA LIFE INSURANCE
COMPANY, et al.,

                Defendants.

CASE NO. C14-1193 MJP

ORDER ON PLAINTIFF'S MOTION
FOR REMAND

THIS MATTER comes before the Court on Plaintiff's Motion for Remand. (Dkt. No.
14.) Having reviewed the Parties' briefing and all related papers, the Court GRANTS the motion
and REMANDS this action to King County Superior Court.

**Background**

Plaintiff Vera Gunnarson, in her individual capacity and as guardian ad litem for Daniel
Gunnarson, filed this action in King County Superior Court against Defendants Transamerica
Life Insurance Company and Nicole Rita Taylor, sole proprietor of Sterling Estate Planning
Services. (Dkt. No. 6.) Plaintiff alleges breach of contract, violation of the Insurance Fair

1   Conduct Act and Consumer Protection Act, bad faith, intentional and negligent

2   misrepresentation, and other claims, stemming from her dispute with Transamerica over

3   coverage for Daniel Gunnarson's dementia care under his long-term-care insurance policy.  (Id.)

4        Defendants removed the action to this Court, alleging that Ms. Taylor was fraudulently

5   joined in order to defeat diversity jurisdiction in federal court, and that Plaintiff could not state a

6   plausible claim against her.  (Dkt. Nos. 1, 2, 26.)  Defendants argue, inter alia, that Ms. Taylor

7   was an agent of a disclosed principal acting within the scope of her agency, and thus cannot be

8   personally liable; that Plaintiff cannot state a plausible misrepresentation claim against Ms.

9   Taylor; and that any claims against Ms. Taylor are time-barred.  (Id.)  Plaintiff contests these

10   allegations and now moves for remand.  (Dkt. No. 14.)

11                           **Discussion**

12   I.     Legal Standard

13       A.    Removal and remand

14        "A defendant may remove an action to federal court based on federal question

15   jurisdiction or diversity jurisdiction.  28 U.S.C. § 1441.  However, [i]t is to be presumed that a

16   cause lies outside [the] limited jurisdiction [of the federal courts] and the burden of establishing

17   the contrary rests upon the party asserting jurisdiction. The strong presumption against removal

18   jurisdiction means that the defendant always has the burden of establishing that removal is

19   proper, and that the court resolves all ambiguity in favor of remand to state court."  Hunter v.

20   Philip Morris USA, 582 F.3d 1039, 1042 (9th Cir. 2009) (internal quotation marks and citations

21   omitted).

22        Although an action may be removed to federal court only where there is complete

23   diversity of citizenship, 28 U.S.C. §§ 1332(a), 1441(b), "one exception to the requirement for

24

complete diversity is where a non-diverse defendant has been 'fraudulently joined.'" <u>Morris v.</u>
<u>Princess Cruises, Inc.</u>, 236 F.3d 1061, 1067 (9th Cir. 2001).  Fraudulent joinder "is a term of
art." <u>McCabe v. General Foods Corp.</u>, 811 F.2d 1336, 1339 (9th Cir.1987).  Joinder of a non-
diverse defendant is deemed fraudulent, and the defendant's presence in the lawsuit is ignored for
purposes of determining diversity, "[i]f the plaintiff fails to state a cause of action against a
resident defendant, and the failure is obvious according to the settled rules of the state." <u>Id.</u>
Further, the defendant "is entitled to present the facts showing the joinder to be fraudulent." <u>Id.</u>;
<u>see also</u> <u>Morris</u>, 236 F.3d at 1068 (quoting <u>Cavallini v. State Farm Mutual Auto Ins. Co.</u>, 44 F.3d
256, 263 (5th Cir.1995), for the proposition that "fraudulent joinder claims may be resolved by
'piercing the pleadings' and considering summary judgment-type evidence such as affidavits and
deposition testimony").

"Fraudulent joinder must be proven by clear and convincing evidence." <u>Hamilton</u>
<u>Materials, Inc. v. Dow Chem. Corp.</u>, 494 F.3d 1203, 1206 (9th Cir. 2007).  "[T]here is a general
presumption against fraudulent joinder." <u>Id.</u>

II.      Failure to State a Claim Against Taylor

A.       Agency bar to personal liability

Defendants argue that Ms. Taylor sold the Gunnarsons insurance as an agent for Bankers
United, Transamerica's predecessor, and that, as an agent acting within the scope of her agency
and not for her own personal advantage, Ms. Taylor cannot be individually liable.  (Dkt. No. 26
at 4-5.)  Plaintiff argues that Ms. Taylor is jointly and severally liable because she was acting as
an agent for an undisclosed principal, (Dkt. No. 14 at 13), and also appears to assert what is
essentially an estoppel argument: Ms. Taylor represented to the Gunnarsons that she was an
independent sole proprietor conducting business under the name Sterling Estate Planning

1  Services, did not disclose any agency relationship to the Gunnarsons at the time of the sale, and

2  cannot now raise any undisclosed agency relationship to shield herself from personal liability.

3  (Dkt. No. 14 at 11-13.)

4        Joint and several liability applies to agents of undisclosed principals.  <u>Crown Controls,</u>

5  <u>Inc. v. Smiley</u>, 110 Wn.2d 695, 706 (1988).  Additionally, a sole proprietor "who fraudulently

6  makes a misrepresentation of fact, opinion, intention or law for the purpose (sic) of inducing

7  another to act or refrain from action in reliance thereon in a business transaction is liable to the

8  other for the harm caused to him by his justifiable reliance upon the misrepresentation."  <u>Kaas v.</u>

9  <u>Privette</u>, 12 Wn. App. 142, 146-47 (1974) (quoting Restatement (First) of Torts § 525 (1938)).

10       In her complaint, Plaintiff alleged Ms. Taylor was a businesswoman offering estate

11  planning services, including selling long-term-care insurance, through Sterling Estate Planning

12  Services.  (Dkt. No. 6 at 2.)  Plaintiff alleged Ms. Taylor sold the Gunnarsons Bankers United

13  policies when she visited their home.  (<u>Id.</u>)  In support of removal, Defendants offered a

14  declaration of Ms. Taylor that states she was an "independent agent" for Bankers United when

15  she visited the Gunnarson home.  (Dkt. No. 4 at 1.)  Ms. Taylor also submitted a supplemental

16  declaration where she describes herself as an "appointed agent."  (Dkt. No. 25 at 1.)  While this

17  testimony speaks to whether an agency relationship existed (though Defendants point to no

18  authority that recognizes either "independent agent" or "appointed agent" as a specific type of

19  agency relationship recognized by Washington law), it does not speak to whether that

20  relationship was disclosed to Plaintiff.

21       Nothing Plaintiff pleads and nothing in Ms. Taylor's declarations answers the question of

22  whether the principal was or was not disclosed to the Gunnarsons during the course of the sales

23  visit.  It does not follow that when an insurance saleswoman operating under an independent

24

ORDER ON PLAINTIFF'S MOTION FOR
REMAND- 4

1  business name sells a policy from an insurance company, she is automatically an agent of a

2  disclosed principal, as Defendants contend.  (Dkt. No. 26 at 4.)  Obviously the insurance policy

3  is provided by Bankers United, and not Ms. Taylor; however, the service of insuring is not

4  necessarily the same as the service of selling insurance, though many entities do both.  It is

5  equally as plausible, based on the complaint, that Ms. Taylor represented herself as independent

6  of Bankers United, associated only with Sterling Estate Planning Services, and could be estopped

7  from now claiming that an agency relationship shields her from liability.  These are questions of

8  fact.  Under Washington law, if the principal was undisclosed, Ms. Taylor is jointly and severally

9  liable, and Plaintiff states a claim against her.  Any factual ambiguities must be resolved in favor

10  of Plaintiff and in favor of remand.  Hunter v. Philip Morris USA, 582 F.3d 1039, 1042 (9th Cir.

11  2009).

12          Defendants cite to Matsko v. Dally, 49 Wn.2d 370, 374 (1956), for the proposition that

13  "an agent who acts for an undisclosed principal will be personally bound by the obligations of

14  the contract as principal if the name of the principal is not disclosed," and again argue that the

15  Gunnarsons knew the insurance policy was provided by Bankers United, with Ms. Taylor

16  signing the policy applications as "agent."  (Dkt. No. 26 at 5.)  This argument again conflates

17  providing insurance with selling insurance, which are not the same action in all circumstances,

18  and ignores the possibility that Ms. Taylor represented her role to be that of an unaffiliated

19  saleswoman who would receive a commission for referring the Gunnarsons to Bankers United.

20          Other cases cited by Defendants in support of their contention that no claim can be

21  asserted against Ms. Taylor are distinguishable.  Mercado v. Allstate Ins. Co., 340 F.3d 824 (9th

22  Cir. 2003) (applying California law) and Garoutte v. Am. Family Mut. Ins. Co., Case No. C12-

23  1787MJP, 2013 WL 231104 (W.D. Wash. Jan. 22, 2013), both involved agents who were

24

1  employees acting within the scope of their employment (i.e. disclosed agents), not purported

2  agents who held themselves out as independent sole proprietors and operated under a different

3  business name.

4      Whether or not Plaintiff is ultimately successful on her claims against Ms. Taylor,

5  Defendants have not met their burden of showing Plaintiff's failure to state a claim is "obvious

6  according to the settled rules of the state." McCabe, 811 F.2d at 1339.  The Court is unable to

7  conclude that Ms. Taylor has no individual liability based on the pleadings and facts presented.

8          B.      Actionable misrepresentation claim

9      A buyer is entitled to rely upon the truth of a statement of a material fact made about the

10  subject matter of a sale.  Scroggin v. Worthy, 51 Wn.2d 119, 123 (1957).  A prospective buyer

11  may accept a statement about a material fact at face value if the statement is made to induce a

12  sale.  Recourse is available against such a misrepresentation.  Johnson v. Olsen, 62 Wn.2d 133

13  (1963).  In other words, "[o]ne who fraudulently makes a misrepresentation of fact, opinion,

14  intention or law for the purpose (sic) of inducing another to act or refrain from action in reliance

15  thereon in a business transaction is liable to the other for the harm caused to him by his

16  justifiable reliance upon the misrepresentation." Kaas, 12 Wn. App. at 146-47 (quoting

17  Restatement (First) of Torts § 525 (1938)).

18      Defendants argue that Plaintiff cannot state a misrepresentation claim against Ms. Taylor,

19  individually, because she alleges misrepresentations based only on promotional materials

20  provided by Bankers United.  (Dkt. No. 2 at 11.)  Defendants misread the complaint.  Plaintiff

21  pleads reliance on representations in the promotional materials and representations by Ms.

22  Taylor in the sale.  (Dkt. No. 6 at 3, 12, 15.)

23

24

ORDER ON PLAINTIFF'S MOTION FOR
REMAND- 6

1    Defendants argue that Ms. Taylor had no legal duty to advise Plaintiff of the adequacy of

2    the coverage selected by Plaintiff, and thus cannot state a misrepresentation claim against her

3    stemming from type of coverage provided by the insurance policy.  (Dkt. No. 26 at 9.)

4    Defendants confuse a duty to advise on the adequacy of coverage with the obligation not to

5    intentionally misrepresent what is covered to induce another to enter into a business transaction.

6    Defendants cite to cases which hold that plaintiffs cannot expand the coverage provided

7    by their insurance policies by relying on their expectations or understanding of coverage at the

8    time of sale because those plaintiffs have never paid any premiums for the expanded coverage.

9    (Dkt. No. 26 at 9-10).  While that may be true, Plaintiff here is alleging damages from the

10   intentional or negligent misrepresentation of what is covered during the sale of the policy, not

11   attempting to expand coverage.

12   Finally, Defendants argue that Ms. Taylor could not have misrepresented the scope of

13   coverage because at the time of the sale, only licensed nursing homes could legally provide the

14   services Plaintiffs sought: dementia care outside the home.  (Dkt. No. 26 at 9-11.)  Plaintiff cites

15   Pistorese v. Transamerica Life Ins., 2013 WL 4008828 (W.D. Wash. Aug. 2, 2013) for the

16   proposition that changes in Washington regulations on long-term-care facilities entering into

17   force after the issuance of an insurance policy do not shed light on the intentions of the parties

18   when the contract was formed.  (Dkt. No. 27 at 10.)  Plaintiff also contends Defendants

19   represented that dementia care would be covered under the policy without qualification, (Id.),

20   and that if necessary, dementia care could be covered under an Alternative Care feature even if

21   not otherwise covered by the policy.  (Dkt. No. 6 at 2-3.)  Viewing the facts in the light most

22   favorable to Plaintiff, Defendants have not met their burden of showing Plaintiff's failure to state

23

24

ORDER ON PLAINTIFF'S MOTION FOR
REMAND- 7

1   a claim is obvious according to the settled rules of the state.  Defendants have not met their

2   burden of demonstrating that Plaintiff cannot state a misrepresentation claim against Ms. Taylor.

3                         C.        Statute of Limitations

4          The misrepresentation cause of action accrues for the purpose of the statute of limitations

5   when "the aggrieved party discovers the facts constituting the fraud.  We infer actual knowledge

6   of fraud if the aggrieved party, through due diligence, could have discovered it.  Accordingly, the

7   statute of limitations for a damage action based on fraud commences when the aggrieved party

8   discovers, or should have discovered, the fact of fraud and sustains some damage as a

9   consequence." Hudson v. Condon, 101 Wn. App. 866, 875 (2000) (citing Sherbeck v. Estate of

10  Lyman, 15 Wn. App. 866, 868 (1976)) (internal citations and quotation marks omitted).  "The

11  plaintiff need not be aware of the full extent of the damages; knowledge of some actual,

12  appreciable damage is sufficient to begin the running of the statute of limitations." Id.  "While

13  the determination of when a plaintiff suffered actual damage is a question of fact, the issue can

14  be decided as a matter of law if reasonable minds could reach but one conclusion." Id.

15         Defendants argue that the statute of limitations has run because Plaintiff is legally

16  charged with actual knowledge of the plain language of the policy, which Plaintiff has had in her

17  possession for eighteen years. (Dkt. No. 26 at 15.)  Defendants contend that Plaintiff should

18  have discovered that care would only be provided in a licensed nursing home when she read the

19  complete policy, and thus she should have known about the misrepresentation, and begun to

20  incur damages, when she received and read the policy. (Id.)  Defendants quote from the policy,

21  which contains a section defining "nursing home" as a facility that "is licensed by the state as a

22  nursing home" and argue that misrepresentation damages would begin to accrue when the

23

24

1    Gunnarsons read that definition and compared it with any contrary representations during the

2    sale.  (Dkt. Nos. 26 at 9, 4-5 at 8.)

3         Defendants fail to account, however, for language in the policy stating, in a section titled

4    "nursing home benefit conditions," that "benefits may be paid for a confinement in a facility that

5    is not in full compliance with the Nursing Home definition, if Our Personal Care Advisor agrees

6    that the facility substantially complies."  (Dkt. No. 4-5 at 10.)  Based on this language, whether

7    Plaintiff can be charged with knowing, in 1995, that coverage for a facility she alleges to be

8    substantially similar would be denied and thus begin to accrue damages, is a question of fact on

9    which reasonable minds could disagree.  The Court is unable to conclude that Plaintiff's

10   misrepresentation claims are time-barred.

11                                    **Conclusion**

12        Defendants have failed to meet their burden of showing that Ms. Taylor is a sham

13   defendant joined to defeat diversity jurisdiction.  Whether Plaintiff ultimately prevails on her

14   claims against Ms. Taylor is not relevant for purposes of determining diversity; Plaintiff has not

15   obviously failed to state a claim against her under the settled law of Washington.  Because there

16   is not complete diversity of citizenship, this Court is without jurisdiction to hear this case.

17   Plaintiff's motion for remand is GRANTED and the case is hereby REMANDED to King

18   County Superior Court.

19

20        The clerk is ordered to provide copies of this order to all counsel.

21        Dated this 5th day of November, 2014.

22

23

24                                         Marsha J. Pechman
                                           Chief United States District Judge

ORDER ON PLAINTIFF'S MOTION FOR
REMAND- 9